UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD STEPHEN DYKES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:07-CV-733 CAS |
| JOETTA MITCHELL, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion for summary judgment filed by defendants Joetta Mitchell, Almeda Ball-Tyler, Terry A. Payne, Eugene Stubblefield, and the City of St. Louis. Plaintiff Harold Stephen Dykes, a Missouri prisoner, brings this action pursuant to 42 U.S.C. § 1983 through appointed counsel, alleging that the defendants violated his civil rights while he was held as a pretrial detainee at the St. Louis City Justice Center ("CJC"), because Mitchell, Ball-Tyler and Payne failed to protect him from attack by another inmate, and Stubblefield and the City of St. Louis have a custom, practice and unwritten policy of failing to protect inmates detained at CJC from attacks by other inmates. Plaintiff opposes the motion for summary judgment and it is fully briefed. For the following reasons, the motion will be granted in part and denied in part.

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

**Facts**

In February 2007, plaintiff was a pretrial detainee being held at CJC. At all relevant times, plaintiff was assigned to Unit 4D, cell number 9 at CJC, and Arthur Manning ("Manning") was incarcerated assigned to Unit 4D, cell number 8 at CJC.

On February 15, 2007, plaintiff came into the possession of a book regarding Islam. Later that day, Manning, a Muslim, observed plaintiff reading the book and began to threaten plaintiff regarding his possession of the book. James Fujimoto, another inmate assigned to Unit 4D, heard Manning tell plaintiff that he was a "honky killer," and further heard Manning tell plaintiff that he would "fuck him up," if plaintiff did not return the book to Manning. Later that evening, Manning continued to threaten plaintiff from within his cell. As a result of Manning's threats, plaintiff returned the book to Manning on the evening of February 15, 2007.

After returning the book to Manning, plaintiff completed two (2) Inmate Request Forms, one addressed to defendant and Unit Manager Almeda Ball-Tyler and the other addressed to defendant and Correctional Case Manager Terry Payne. In the Inmate Request Form addressed to Payne, plaintiff stated:

> Please be advised that I am fearful of a serious threat of danger and harm because of a very violent attitude towards me by Inmate Arthur Manning who is in Cell #8, beside me. He is very angry over a book that I had which he claimed – so I gave it to him. I believe the issue is racially motivated, though because he continues to make sarcastic, racial remarks, as his cell mate (James N. Macy) can testify to. Other witnesses to his aggressiveness towards me are Inmate James Fujimoto and Inmate Jonathon Byers. I request that you move either him or me immediately before an altercation occurs. I have tried to be peaceful. I have asked the CO in my unit about being moved, but I was told that it requires approval first. I have also sent an Inmate Request to your supervisor, Mrs. Ball-Tyler advising her of the situation. Thank you.

In the Inmate Request Form addressed to Ball-Tyler, plaintiff stated:

> Please be advised that I have sent an Inmate Request to Mrs. Payne on this date advising her of the threat of danger to me by Inmate Arthur Manning, who is also in D-Unit, and requesting that one of us be moved before something happens. He is a violent racist who refuses to drop a small matter of a book, which I had and he claimed – and I gave to him. The CO says that I must have approval before I can be moved. I am writing to let you know about the Inmate Request to Mrs. Payne because of extended delays in response to my former requests to her. Thank you.

After preparing the Inmate Request Forms, plaintiff placed them in the area designated for pick up by correctional staff, and a corrections officer picked up the Inmate Request Forms. The shift commander testified that it was normal for inmates to leave notes for staff members and that correctional staff would deliver the notes through an inter-office mail process. Defendant Ball-Tyler admitted that an Inmate Request Form is the typical method for an inmate to communicate with her, although it was not the normal manner for an inmate to report a threat or safety issue.

Under CJC's Major Violations/Disciplinary Hearing Policy, threatening bodily harm is a major rule violation. A report of a major rule violation initiates a number of actions with the facility that must be completed, including moving an inmate to Administrative Segregation. Ball-Tyler testified that the Inmate Request Form plaintiff completed and addressed to her would have constituted a verifiable risk of harm which should lead to plaintiff's referral to special management housing. Defendant Payne testified that the Inmate Request Form plaintiff completed and addressed to her would have required her to report the situation to her supervisor to ensure that plaintiff was removed from the situation. Both Ball-Tyler and Payne deny receiving plaintiff's Inmate Request Forms.

On February 16, 2007, during the evening meal, Manning again threatened plaintiff. Defendant Joetta Mitchell was the corrections officer assigned to Unit 4D during the evening of February 16, 2007. Plaintiff reported Manning's threats to Mitchell and requested that he be moved.

4

Mitchell responded that because the caseworkers were gone for the day, she was not going to move plaintiff.

Later that evening, while in line to receive medication, Manning again threatened plaintiff. Plaintiff again reported Inmate Manning's threats to Mitchell and again requested to be moved. Mitchell told plaintiff that he should stop being a "tattle tale."

Although Mitchell denies that plaintiff told her about Manning's threats, she admits that an inmate reporting that he is fearful of another inmate would constitute a verifiable risk of harm that would initiate CJC's Administrative Segregation and Protective Custody Policy.

On the evening of February 16, 2007, Manning entered plaintiff's cell holding a sock filled with batteries and hit plaintiff in the head with the sock three or four times, causing significant injury to plaintiff.

**Discussion**

### A. Defendants Mitchell, Ball-Tyler and Payne

Because plaintiff was a pretrial detainee at all relevant times, his constitutional claims based on the failure to protect him from assault by another inmate arose under the Fourteenth Amendment, but the Eighth Amendment deliberate indifference standard is applied to his claims. See Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006) (citing cases).

The Eighth Amendment to the United States Constitution forbids the infliction of "cruel and unusual punishments." The Supreme Court has held that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). That duty, among other things, requires prison officials to take reasonable measures to "protect prisoners from violence at the hands of other prisoners." Id. (quotation marks and quoted

case omitted). The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part of the penalty that criminal offenders pay for their offenses." See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, he must demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. The second showing concerns the state of mind of the prison official who is being sued. It requires the plaintiff to show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. The subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted).

Although "constructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference, see Farmer, 511 U.S. at 837, it does not follow that the required element of subjective knowledge cannot be proved by evidence of surrounding circumstances." Spruce v. Sargent, 149 F.3d 783, 786 (8th Cir. 1998). "The question whether the official knew of the risk is subject to demonstration, like any other question of fact, by inference from circumstantial evidence." Id. (citing Farmer, 511 U.S. at 842).

The defendants do not contest that plaintiff was incarcerated under conditions posing a substantial risk of serious harm. The Court therefore assumes for purposes of this opinion that the first part of the deliberate indifference test is met. Defendants' motion for summary judgment turns on the second part of the test, concerning the defendants' state of mind.

The Court finds that genuine issues of material fact remain which preclude the entry of summary judgment in favor of defendants Mitchell, Ball-Tyler and Payne. With respect to defendant Mitchell, there is a clear dispute of material fact as to whether plaintiff personally informed Mitchell, prior to the assault, that he had been threatened by inmate Manning and requested that he or Manning be moved to a different unit. Thus, there is an issue as to whether Mitchell actually knew of and disregarded an excessive risk to plaintiff's health or safety.

With respect to defendants Ball-Tyler and Payne, there is a dispute of fact as to whether these defendants were aware of plaintiff's Inmate Request Forms reporting inmate Manning's threats and requesting to be moved. Although the defendants deny seeing the Inmate Request Forms, plaintiff testified that he prepared the Request Forms addressed to Ball-Tyler and Payne the day before the assault, and placed them in the area designated for pick-up by correctional staff, where they were picked up by a correctional officer. Plaintiff presented evidence that an Inmate Request Form is a normal way for an inmate to communicate with correctional staff, and that if the defendants did receive the Inmate Request Forms, CJC policy would have required them to take action.

Plaintiff has therefore raised an issue of material fact as to whether a jury could infer from this circumstantial evidence that Ball-Tyler and Payne received plaintiff's Inmate Request Forms and thus actually knew of the risk of serious injury he faced prior to Manning's attack. Cf. Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996) (summary judgment appropriate where plaintiff did not allege facts from which an inference could be made that prison officials actually knew of the risk of assault by another inmate to which he was exposed).

The defendants' motion for summary judgment should therefore be denied with respect to defendants Mitchell, Ball-Tyler and Payne.

### B. Defendant Stubblefield

Defendant Stubblefield is sued in his individual and official capacities as the Superintendent of the Division of Corrections of the City of St. Louis, with responsibility for all operations of the CJC. See Complaint at 3, ¶ 9. Plaintiff alleges that Stubblefield had a policy and custom of failing to protect inmates from attack by other inmates, and of delaying medical treatment to inmates. Defendant Stubblefield moves for summary judgment on these claims.

There is no vicarious liability under 42 U.S.C. § 1983. Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 691 (1978). A supervisor may not be held liable under § 1983 merely because his subordinate committed a constitutional tort. See Clay v. Conlee, 815 F.2d 1164, 1169 (8th Cir. 1987). A supervisor may be held individually liable under § 1983 if he either "directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation." Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 673 (8th Cir. 2007). A supervisor may also be liable if he fails to adequately receive, investigate or act upon complaints of unconstitutional activity by subordinates. Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996).

Plaintiff does not allege that defendant Stubblefield directly participated in the claimed constitutional violation of failing to protect him from attack, or that Stubblefield failed to train or supervise the defendants who allegedly caused the violation. Nor does plaintiff allege that Stubblefield failed to receive, investigate or act upon complaints of unconstitutional activity by his subordinates. As a result, plaintiff fails to state a claim against defendant Stubblefield, and he is entitled to summary judgment on plaintiff's failure to protect claim.

In addition, Stubblefield is entitled to summary judgment on plaintiff's claim concerning a policy of delaying medical attention to inmates at CJC, because the Court has held that plaintiff was

not deprived of his constitutional rights with respect to medical treatment. See Mem. and Order of May 27, 2009 (Doc. 97). Cf. Andrews, 98 F.3d at 1079 (failure to train allegation failed against police chief where training of officers was found to be adequate and deprivation did not result from deficiency in training).

**C. Defendant City of St. Louis**

Plaintiff alleges that the City of St. Louis (the "City") has a custom, practice and unwritten policy of failing to protect inmates detained at CJC from serious bodily injury resulting from attacks by other inmates, and a custom, practice and unwritten policy of delaying medical care to inmates. The City moves for summary judgment on this claim.

As previously stated, there is no vicarious liability under 42 U.S.C. § 1983. Monell, 436 U.S. at 691. For a municipality to be liable under § 1983, a plaintiff must demonstrate that his injury resulted from "either an official municipal policy or a widespread custom or practice that caused the plaintiff's injury." Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir.1998). Plaintiff has not alleged the existence an "official municipal policy" of failing to protect inmates from attack by other inmates, so the Court's inquiry is into the presence of a custom or practice.

Evidence "of a single incident of unconstitutional activity is not sufficient to impose liability." Mann v. Yarnell, 497 F.3d 822, 828 (8th Cir. 2007). Rather, the practice must be "permanent and well-settled." Davison v. City of Minneapolis, Minn., 490 F.3d 648, 659 (8th Cir. 2007). Specifically, a plaintiff asserting a custom or practice claim must establish:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or a tacit authorization of such conduct by the governmental entity's policymaking officials after notice of that misconduct; and

(3) . . . that the custom was the moving force behind the [injury].

Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998) (internal citations omitted); see also S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1028 (8th Cir. 2002).

In moving for summary judgment, the City asserts that it has policies in place to evaluate and classify inmates to help keep order, prevent assaults and avoid disruptive behavior at CJC. The City presented evidence concerning its official Inmate Classification System policy and its Housing Unit Supervision policy. The Classification System policy is designed to separate inmates into groups that reduce the probability of assault and disruptive behavior. The Classification System policy includes completing an Initial Custody Assessment Scale, Inmate Admission and Screening Form, and reviewing the charges pending against the inmate. This includes identifying individuals as "known enemies." The Classification System policy was used to classify both plaintiff and inmate Manning, and each was placed in the general prison population because there was no evidence prior to February 2007, based on the intake information and information provided by plaintiff and Manning, that they should not be placed in the same unit, or that either would require more supervision than the general prison population.

Inmates placed in general population are supervised pursuant to policies outlined in the Housing Unit Supervision policy. The City presented evidence that its Department of Corrections keeps records concerning the safety of prisoners. Individual prisoners' records are reviewed to determine if they have violent tendencies and are likely to injure their fellow inmates. Prior to February 2007, there was no information indicating that frequent violence or assaults existed that

might place any prisoner or group of prisoners in reasonable fear for their safety. Prior to February 2007, there were no reports of altercations between plaintiff and Manning.

The City also presented evidence that all Department of Corrections employees are given copies of and are trained on the Inmate Classification System and Housing Unit Supervision policies. The existence of these policies and training reflect the City's concern over the possibility of inmate-on-inmate violence. Cf. Hott v. Hennepin County, Minn., 260 F.3d 901, 907 (8th Cir. 2001) (institution's policies and training materials reflected concern over possibility of inmate suicide).

"[T]o survive summary judgment, plaintiff must present sufficient evidence which would enable a jury to return a favorable verdict regarding the existence of a "custom or usage with the force of law." Coleman v. City of Pagedale, 2008 WL 269000, *2 (E.D. Mo. Jan. 30, 2008) (quoting McMillian v. Monroe County, Ala., 520 U.S. 781, 796 (1997)). Plaintiff does not allege that implementation of the City's official policies caused the claimed violation of his constitutional rights. In fact, in opposing summary judgment, plaintiff argues that defendants Mitchell, Ball-Tyler and Payne failed to comply with official CJC policies. See Pl.'s Opp. to Summ. J. at 9.

Plaintiff has not offered any evidence to establish (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by CJC's employees, i.e., a custom or practice; (2) deliberate indifference to or a tacit authorization of such conduct by CJC's policymaking officials after notice of that misconduct; or (3) that the custom or practice was the moving force behind plaintiff's injury. See Ware, 150 F.3d at 880. As a result, the Court concludes that the City has established its entitlement to judgment as a matter of law on plaintiff's custom and policy claims concerning the failure to protect him from inmate attacks, as no genuine issues of material fact remain with respect to this claim.

In addition, the City is entitled to summary judgment on plaintiff's claim that the City has a custom, practice and unwritten policy of delaying medical attention to inmates at CJC. The Court determined that the medical defendants, Susan Singer, M.D., and Correctional Medical Services, Inc., were entitled to summary judgment on the merits of plaintiff's underlying delay in medical treatment claim, as plaintiff's constitutional rights were not violated. It necessarily follows that plaintiff's custom- and policy-based claims against the City with respect to delay in medical care must also fail. There must be a finding of liability on an underlying substantive claim before a governmental entity may be held liable for its custom or policy. See, e.g., City of Los Angeles v. Heller, 475 U.S. 796 (1986) (per curiam); Brodnicki v. City of Omaha, Nebraska, 75 F.3d 1261, 1266 (8th Cir.) (where police officers did not violate plaintiff's civil rights, city could not be liable under theory of inadequate training or municipal custom), cert. denied, 519 U.S. 867 (1996).

**Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment should be denied as to defendants Joetta Mitchell, Almeda Ball-Tyler and Terry A. Payne, and granted as to defendants Eugene Stubblefield and the City of St. Louis. The remaining claims in this matter will be set for trial by separate order.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Joetta Mitchell, Almeda Ball-Tyler, Terry A. Payne, Eugene Stubblefield, and the City of St. Louis's motion for summary judgment is **GRANTED in part** and **DENIED in part**; said motion is **GRANTED** as to defendants Stubblefield and the City of St. Louis, and **DENIED** as to defendants Mitchell, Ball-Tyler and Payne. [Doc. 80]

An appropriate partial judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  2nd  day of June, 2009.